IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| **BRETT A. GRANET,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:19-cv-821 |
| ) | |
| **PRESIDIO, INC.,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

# COMPLAINT

Plaintiff, Brett A. Granet ("Mr. Granet" or "Plaintiff"), by counsel, hereby alleges the following causes of action:

## INTRODUCTION

1. Mr. Granet brings a cause of action under the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C. § 621 *et seq.*, against Defendant, Presidio, Inc., arising from the termination of Mr. Granet's employment based on his age.

## PARTIES

2. Mr. Granet is a natural person and a citizen of the Commonwealth of Virginia, residing in Henrico County, Virginia. Mr. Granet's date of birth is December 4, 1963.

3. Defendant, Presidio, Inc. ("Presidio" or "Defendant"), is a Delaware corporation with its principal office located in New York, New York. Presidio is a leading IT solutions provider focused on digital infrastructure, business analytics, cloud, security, and emerging solutions. Presidio has an office located in the City of Richmond, Virginia.

4. Defendant is an employer as defined by 29 U.S.C. § 630(b).

## JURISDICTION AND VENUE

5. On May 1, 2019, Mr. Granet timely filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") and, pursuant to a work sharing agreement, with the Virginia Division of Human Rights.

6. On August 5, 2019, the EEOC issued a Notice of Right to Sue to Mr. Granet.

7. Mr. Granet timely filed this action less than ninety (90) days after receipt of the Notice of Right to Sue.

8. This Court has subject matter jurisdiction pursuant to the ADEA.

9. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the cause of action arises under the ADEA, a law of the United States.

10. Venue for this action lies properly in the United States District Court for the Eastern District of Virginia, Richmond Division, pursuant to 28 U.S.C. § 1391(b), as the events giving rise to Mr. Granet's claims occurred in the City of Richmond, which is a territory included within those assigned to the Richmond Division of the Eastern District of Virginia.

## FACTUAL BACKGROUND

11. Mr. Granet is a well-regarded and distinguished sales leader with extensive experience in managing large accounts for premier IT firms.

12. On May 14, 2018, Presidio hired Mr. Granet as a Client Executive for IT Transformation.

13. Shortly after Presidio hired Mr. Granet, Bob Michie ("Mr. Michie"), Regional Manager and Mr. Granet's direct supervisor, advised Mr. Granet of his account list, including Markel Insurance and numerous potential high-gross margin accounts identified by Mr. Michie, such Altria, Gannett Co., Inc., Hunton & Williams LLP, McGuireWoods LLP, Huntington Ingalls

Industries, and Allianz. These accounts had large projected margins, which directly influenced Mr. Granet to agree to work for Presidio.

14. At Presidio, Mr. Granet earned a base salary of $125,000.00 with a commission rate of 10% on margins of $0-$500,000.00; 15% on margins of $500,000.00-$2,000,000.00 with a $10,000.00 bonus; and 17% on margins of $2,000,000.00-$4,000,000.00 with a $30,000.00 bonus. Mr. Michie projected Mr. Granet's margins for year 1 at $750,000.00, for year 2 at $1,000,000.00, for year 3 at $1,500,000.00, and for year 4 at $2,000,000.00.

15. At all times, Mr. Granet performed his job at a high level.

16. During his tenure with Presidio, Mr. Granet was personally responsible for substantially expanding business at one of Presidio's high-margin accounts.

17. In addition, Mr. Granet added an unpenetrated major account with potential revenues estimated between $30-$40 million over the next 36-48 months, resulting in a gross margin to Presidio between $6-$8 million based on a 20% margin agreement made between Mr. Granet and Nutanix, an original equipment manufacturer ("OEM") supplier.

18. On or about October 2018, Mr. Michie began to interview Lowell Patterson ("Mr. Patterson") for a position on the sales team.

19. On information and belief, Mr. Patterson is approximately thirty (30) years old.

20. Mr. Patterson has far less experience and expertise than Mr. Granet.

21. On belief, Mr. Michie intended to replace Mr. Granet with Mr. Patterson, a much younger worker, as the Account Executive on the majority of the accounts promised to Mr. Granet during the hiring process.

22. Indeed, on or about December 2018 and/or January 2019, Mr. Michie did ultimately take these accounts from Mr. Granet and assigned these accounts to Mr. Patterson.

23. Notably, on information and belief, Mr. Michie only reassigned accounts from Mr. Granet, not from any other member of the sales team, to Mr. Patterson.

24. Mr. Michie then assigned Mr. Granet to focus on a few existing accounts, with the remainder being non-customer healthcare accounts. On information and belief, none of the replacement accounts provided to Mr. Granet had done any business with Presidio in the preceding years, designating these accounts as "low-yielding," "long-term" developmental accounts.

25. In addition to reassigning the majority of Mr. Granet's initial account list to Mr. Patterson, Mr. Michie approached Mr. Granet on or about late-December 2018 or early-January 2019 and implied he intended to reassign Mr. Granet's most high-yielding margin account (Markel Insurance).

26. In January 2019, Presidio hired Mr. Patterson as an Account Manager. On information and belief, Mr. Michie provided Mr. Patterson the accounts he stripped from Mr. Granet. Following the hire of Mr. Patterson, Mr. Michie began treating Mr. Granet differently, finding no time to meet with Mr. Granet to discuss important business matters, while instead meeting with Mr. Patterson and discussing non-business-related items.

27. Beginning in June 2018, Presidio shared an office building in Scott's Addition in the City of Richmond with Morton, an IT consulting firm. Presidio and Morton had a mutual open-door policy and occasionally shared lunches and holiday parties together. Over approximately six months, while employed with Presidio, Mr. Granet became friends with Rachel Riles ("Ms. Riles"), a twenty-four (24) year-old recruiter for Morton. Mr. Granet visited Ms. Riles at her office every 2-3 days and Ms. Riles occasionally visited Mr. Granet and the rest of the Presidio team in their offices across the hall. At all times, Mr. Granet and Ms. Riles engaged in a consensual, friendly, non-sexual relationship.

28. On January 22, 2019, Ms. Riles sent Mr. Granet an invitation on LinkedIn, a social networking website. An invitation is akin to a connection and/or friend request. Thereafter, Mr. Granet accepted the invitation and sent Ms. Riles a message on LinkedIn, stating, "Thanks for the invite Rachel. I love chatting with you and I like you. Maybe we could grab dinner sometime or do you think I might be too young for you?? :)" The last remark about age was in jest. Ms. Riles responded, "Brett, I appreciate your interest, but it makes me very uncomfortable. I prefer to keep our relationship professional. Thank you for understanding. – Rachel." Mr. Granet immediately responded, "I absolutely agree! And I was trying to inject a little levity into our communication. I had no intent to offend and deeply apologize if I did so. I'll see you soon. Get to the gym and take care of your back!:) Have a great night!"

29. The next morning, on January 23, 2019, Mr. Granet visited Ms. Riles at her office and offered an apology in person. Ms. Riles told Mr. Granet that it was no problem and they shook hands as friends. Mark Morton ("Mr. Morton"), Founder and President of Morton, saw Mr. Granet approached him, took him by the arm, and escorted him out of the office.

30. Later that day, Mr. Michie called Mr. Granet into his office. Mr. Michie advised Mr. Granet that Mr. Morton told him about his conduct toward Ms. Riles. Mr. Michie then stated, "why are you asking a woman much younger than yourself out to dinner? You're as old as me and you asked her out to dinner! You have no right to do that. I'm so pissed off right now," or words to that effect. When Mr. Granet attempted to explain, Mr. Michie cut him off and stated, "I don't even want to hear it. I already called HR, and this ball is in motion. You're probably going to lose your job." Prior to Mr. Michie's contact with HR, Mr. Michie had not spoken with Mr. Granet about his alleged conduct. Mr. Michie's conduct shocked Mr. Granet and brought him to

tears. Mr. Michie told Mr. Granet to go home for the rest of the day and he would be in contact on the "next steps."

31. Later that evening, Mr. Granet sent Mr. Michie multiple text messages, respectfully requesting Presidio to change their position. Mr. Michie contacted Mr. Granet by phone, stating, "it is out of my hands now. I've been told by HR that the best thing for you is to not come into the office tomorrow." Pursuant to Mr. Michie's direction, Mr. Granet did not go into the office the next day (Thursday).

32. On Friday, January 25, 2019, Mr. Michie and Lisa Loeffler ("Ms. Loeffler"), HR Assistant for Presidio, contacted Mr. Granet by phone. During the call, Mr. Michie advised Mr. Granet, "it does not matter what you say. Here are your choices: you can resign or be terminated," or words to that effect. In addition, Mr. Michie stated if he chose to resign, Presidio would only report Mr. Granet resigned in response to any inquiries about the termination of Mr. Granet's employment. Consequently, Mr. Granet involuntarily resigned his employment from Presidio.

33. On information and belief, Mr. Granet's conduct toward Ms. Riles did not violate Presidio's Employee Handbook or any state and/or federal law. Mr. Granet's conduct was not harassment, sexual or otherwise. Mr. Granet's conduct was not improper in any way.

34. Mr. Michie terminated Mr. Granet's employment because of Mr. Granet's age, both in relation to Mr. Patterson and Ms. Riles.

35. Mr. Granet's forced resignation came less than thirty (30) days before several preapproved deals amounting to $6-$7 million were scheduled to close and purchase orders were to be issued. Margins on these combined transactions at the time of Mr. Granet's forced resignation totaled approximately $1,242,397.00. These margins were due to extensive work performed by Mr. Granet over the preceding nine (9) months. At the time of his forced resignation,

Mr. Granet had gross margins of $65,614.00. With these additional margins, his commissions would have increased by approximately $164,641.00 and he would have received a $10,000.00 bonus. Mr. Granet never received these commissions for work he performed. Instead, on information and belief, Presidio provided these commissions to Mr. Patterson.

36. Notably, Presidio delayed a commission to be claimed at Splunk, an OEM software provider, by Presidio in August 2018 due to not filing the "finder's fee" claim with Splunk. Mr. Granet repeatedly reminded Mr. Michie to file this paperwork or Presidio would lose the money. Mr. Granet even had Splunk authorize an extension in the paperwork to allow Presidio to be paid several months after the claim period ended. Ultimately, Presidio filed the claim with Splunk approximately two weeks after Mr. Granet's forced resignation. Presidio did not pay Mr. Granet commissions on this transaction. Again, on information and belief, Presidio paid these commissions to Mr. Patterson.

## STATEMENT OF CLAIMS

### COUNT I:

### DISCRIMINATION UNDER THE ADEA (29 U.S.C. § 623(a)(1))

37. Mr. Granet incorporates by reference and realleges each allegation set forth above.

38. At all relevant times, Mr. Granet was at least 40 years old.

39. Mr. Michie, on behalf of Presidio, discriminated against Mr. Granet on the basis of Mr. Granet's age by stripping Mr. Granet of the majority of his accounts and assigning these accounts to Mr. Patterson, a much younger and less-qualified new employee.

40. Mr. Michie then assigned Mr. Granet replacement accounts which had done no business with Presidio in the preceding years, designating these accounts as "low-yielding," "long-term" developmental accounts.

41. In addition, Mr. Michie, on behalf of Presidio, discriminated against Mr. Granet on the basis of Mr. Granet's age by terminating his employment with Presidio because he asked out a younger woman at another company.

42. Presidio's proffered reason for the termination of Mr. Granet's employment is pretext for discrimination on the basis of age.

43. Age is not a bona fide occupational qualification reasonably necessary to the normal operation of Presidio's business.

44. Presidio did not force Mr. Granet to resign based on reasonable factors other than age, including a bona fide seniority system, an employee benefit plan, or for good cause.

45. Presidio's actions were intentional and performed with malice and/or reckless indifference to Mr. Granet' federally protected civil rights.

46. Due to Presidio's unlawful conduct, Mr. Granet was forced to resign his employment with Presidio, suffering lost wages and benefits, lost commissions, and lost opportunities.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff, Brett A. Granet, respectfully requests that this Court:

A. Enter judgment in his favor and against Defendant, Presidio, Inc.;

B. Declare the acts and practices complained of herein are in violation of Mr. Granet's rights as secured by the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*;

C. Enjoin Defendant from engaging in such unlawful employment practice;

D. Order such affirmative action as may be appropriate, including, but not limited to, hiring Mr. Granet to a comparable position at Presidio to his former position or, in the alternative, awarding Mr. Granet front pay;

  E. Award all back pay and benefits, including salary increases, commissions, bonuses, vacation pay, and health insurance, and an additional amount as liquidated damages, with interest on same running from January 25, 2019 until the date a final judgment is entered for him;

  F. Award reasonable attorneys' fees, reasonable expert witness fees, and costs;

  G. Award a separate amount to offset the adverse tax effects of lump sum payments of damages and/or back or front pay;

  H. Award pre- and post-judgment interest on any monetary award; and

  I. Award all other such equitable relief as may be appropriate to effectuate the purposes of 29 U.S.C. § 621.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

**BRETT A. GRANET**
*Plaintiff*

By:   /s/
Jesse A. Roche, Esq.
VSB No. 82579
James B. Thorsen, Esq.
VSB No. 18113
Attorneys for Brett A. Granet
THORSENALLEN LLP
5413 Patterson Avenue, Suite 201
P. O. Box 17094
Richmond, Virginia 23226
Telephone: (804) 447-7234
Facsimile: (804) 447-7813
E-mail: jroche@thorsenallen.com
E-mail: jthorsen@thorsenallen.com