IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

BRETT A. GRANET,

        Plaintiff,

v.                                                                                        Civil Action No. 3:19-cv-821

PRESIDIO, INC.,

        Defendant.

## OPINION

This case involves an employment dispute between the plaintiff, Brett Granet, and his former employer, Presidio, Inc. ("Presidio"). Granet, who worked for Presidio as an account manager, claims that the company forced him to resign due to his age. Presidio asserts that it rightfully forced Granet's resignation because of his poor and unprofessional job performance.

When viewed in the light most favorable to him, Granet presents direct evidence of age discrimination and shows that Presidio's stated reasons for firing him serve as a pretext for age discrimination. Granet's Age Discrimination in Employment Act ("ADEA") claim, therefore, survives and the Court will deny Presidio's motion for summary judgment.

## I. BACKGROUND

On May 14, 2018, Granet began working for Presidio at the age of fifty-four as an account manager. His hiring came after numerous interviews with a variety of Presidio employees, including three interviews with the Vice President of Sales in Presidio's Richmond, Virginia office, Bob Michie.

Upon his hiring, Granet took over a variety of client accounts, including Markel. Although Granet claims to have "performed his job at a high level," Presidio disagrees. (ECF No. 1 ¶ 15.) At "an initial lunch meeting" that Granet and Michie had with Markel account

representatives, Michie recounts "that [Granet] was speaking incoherently throughout most of the lunch." (ECF No. 14 ¶ 35.) After the meeting, Granet apologized to the Markel representatives. He explained that he was "a bit 'out of it'" at the lunch because he was "wresting [sic] with some medications [he] had just gotten prescribed" and the "doctor had [him] 'Over-Served' on the sleep medication . . .." (*Id.* ¶ 36 (first alteration in original).) Granet assured his new clients that "all is well now and I'm fully adjusted and back to my normal self (but maybe a bit less harassing?:))" (*Id.*)

Granet's blunders with Markel, an important account for Presidio, extended beyond this botched lunch. On November 20, 2018, Granet accidentally emailed Presidio's "proprietary internal pricing information" to a Markel representative. (*Id.* ¶ 38.) After one of Granet's colleagues at Presidio pointed out the mistake, Granet "attempted to recall the email" and wrote two apology emails, one to the client and one to the Presidio executive who spotted the error. (*Id.*) According to Granet, Presidio's Business Development Manager, James McGehee, made the alleged error and approved the email before Granet sent it. (ECF No. 22, at 13 ¶ 10.) This disputed mistake inspired an email exchange between Michie and McGehee. Michie said "this error was one in a string from Plaintiff, and that it was 'very frustrating.'" (ECF No. 14 ¶ 39.) Michie indicated this error "was 'fortunate' from a 'grounds for fire perspective.'" (*Id.*)

Granet did not confine his mistakes and unprofessionalism to the Markel account. He also made inappropriate comments to a colleague at a professional dinner on or about November 1, 2018. He apologized for these comments by email, writing that "he was 'saddened and ashamed of [his] behavior,'" which he said "has no place in the workplace" and "[did] not represent his character or the man/employee [he is].'" (*Id.* ¶ 42 (first and last alteration in original).) Granet also made several Presidio employees uncomfortable in December 2018, by

asking about his access to the office "when others were not present." (*Id.* ¶ 43.) This raised concern among some Presidio employees that Granet "might be 'going through things he [had] no business going through,'" jeopardizing "things around the office." (*Id.*)

Granet's unprofessionalism seems to have matched his job performance. On or about October 31, 2018, Granet gave a presentation at a quarterly business meeting. After the meeting, Granet sent a text message to Michie, apologizing "for not conducting the presentation well and for not meeting Mr. Michie's expectations." (*Id.* ¶ 47.) Granet wrote, "[B]y the way, my apologies for being all over the map during my presentation this morning. I didn't stick to the slides and my leg was hurting like hell." (*Id.* ¶ 48.)

In January 2019, Granet did "not accurately forecast[] the business in the forecasting system used within Presidio, which was part of his job responsibilities." (*Id.* ¶ 51.) Following this mistake, Granet, who characterizes this error as "minor" and "common," (ECF No. 22, at 12), sent another text message to Michie, writing, "Sorry about not paying closer details to my deals in the forecast. I'll try not to let that happen again." (ECF No. 14 ¶ 50.)

Michie says that Granet also "fell short of his sales goals." (*Id.* at ¶ 53.) He "assumed [Granet] at least could meet a fiscal year margin of $500,000, and anticipated that halfway through the year, [Granet] would reach half that amount." (*Id.*) According to Michie, however, Granet only "generated a margin of approximately $72,000" about six months into Granet's employment, more than $175,000 below Michie's expectations. (*Id.*) But Granet details several big projects that closed shortly after his resignation, including two larger deals with margins over $900,000. (ECF No. 22, at 10.) According to Granet, these projects would have increased his margins "to over a million dollars." (*Id.*)

3

The last straw for Presidio came when Granet asked a woman who worked next door to Presidio to dinner. During his eight-month employment with Presidio, Granet visited Morton Consulting, which operated in the office suite next to Presidio's, eight to twelve times per month. Granet says he visited the Morton Consulting office to speak with an employee who had "very good relationships" with a potential client and "had promised to help [Granet] penetrate the account." (*Id.* at 4.) During each visit, Granet "interacted with Rachel Riles, a 2018 college graduate employee of Morton Consulting." (ECF No. 14 ¶ 62.) On January 22, 2019,[1] Granet sent Riles a message on LinkedIn. He wrote, "I love chatting with you and I like you. Maybe we could grab dinner sometime or do you think I might be too young for you?? :)" (*Id.* ¶ 64.) Riles rebuffed Granet's advance, writing back that Granet's interest made her "very uncomfortable." (*Id.*)

On January 23, 2019,[2] Riles reported Granet's "overture" to Morton Consulting's human resource manager, who, in turn, notified Mark Morton, President of Morton Consulting. (*Id.* ¶¶ 27, 65.) Upon "hearing this report, Mr. Morton saw [Granet] in the Morton Consulting office." (*Id.* ¶ 66.) Granet had visited to apologize to Riles. (ECF No. 22, at 5.) Mr. Morton "escorted [Granet] out, telling him not to return." (ECF No. 14 ¶ 66.) Morton then told Michie "about [Granet's] propositioning of a young female employee that Mr. Morton found unacceptable" and "inappropriate." (*Id.* ¶ 67.)

Later that same day, Michie called Granet into his office to advise him of the situation. According to Granet, Michie said, "[W]hy are you asking a woman much younger than yourself

---

[1] Paragraph 64 in ECF No. 14 contains a typographical error, reciting this date as January 22, 2018, instead of January 22, 2019.

[2] Paragraph 65 in ECF No. 14 contains a typographical error, reciting this date as January 23, 2018, instead of January 23, 2019.

4

out to dinner? You're as old as me and you asked her out to dinner! You have no right to do that. I'm so pissed off right now." (ECF No. 1 ¶ 30.) Michie, who is also in his fifties, told Granet that he had "already called [human resources], and this ball is in motion. You're probably going to lose your job." (*Id.*) Michie sent Granet home and told him to await "next steps." (*Id.*)

Michie had set the ball in motion by emailing "Presidio's Human Resource Director, Lisa Loeffler, to explain the situation." (ECF No. 14 ¶ 69.) Michie wrote that "Brett has been harassing one of [Morton's] employees . . . . a 21 year old representative of Morton Consulting." (*Id.*) Michie said that he "had a number of issues with Brett around his job performance and capacity to make good decisions regarding his social and professional interactions both internally and with customers" and that he wanted "to move forward in terminating his employment or simply allowing him to resign." (*Id.*) Loeffler responded the next day with her support for termination.

On January 25, 2019, Michie and Loeffler called Granet and advised him of his choices: "resign or be terminated." (ECF No. 1 ¶ 32.) Granet chose to resign and sent his resignation letter to Loeffler and Michie later that day.

Granet claims that Presidio hired Lowell Patterson, a thirty-year-old, as his replacement. Presidio hired Patterson as an account manager on or about January 7, 2019. Michie had worked to bring Patterson on board since November 2018. According to Michie, he had no plans to terminate Granet's employment and replace him with Patterson during the latter's recruitment; Michie hired Patterson as part of the company's ongoing recruiting efforts. In support of his claim that Michie hired Patterson as his replacement, Granet cites the reassignment of the Markel account and various accounts that did not generate income to Lowell after Granet's departure

from the company. Presidio, however, points out that Granet "remained responsible for 17 accounts until his separation," and the Markel account is the only revenue-generating account Granet claims Patterson took over. (ECF No. 14 ¶ 61; ECF No. 30, at 12.) Upon Granet's resignation, Michie reassigned the accounts that did not generate income to himself, Patterson, and two other Presidio employees, both in their fifties.

## II. DISCUSSION[3]

### *A. ADEA Claim*

The ADEA prohibits employers from discriminating against employees because of age. 29 U.S.C. § 623 (2016). To succeed on an ADEA claim, a plaintiff must prove that his employer took adverse employment action against him because of his age. *Id.*; *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 513 (4th Cir. 2006). "[A]n employee cannot prevail on an age discrimination claim by showing that age was *one* of multiple motives for an employer's decision; the employee must prove that the employer *would not have fired her* in the absence of age discrimination." *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019).

"The Fourth Circuit has outlined 'two avenues of proof' through which 'a plaintiff may avert summary judgment and establish a claim for intentional . . . age discrimination.'" *Gordon v. Napolitano*, 863 F. Supp. 2d 541, 546 (E.D. Va. 2012) (quoting *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 284 (4th Cir. 2004)). Direct evidence of discrimination offers one avenue, and "the indirect, burden-shifting framework of *McDonnell Douglas Corp. v. Green*,

---

[3] Rule 56 of the Federal Rules of Civil Procedure directs courts to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a summary judgment motion, the court must draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nevertheless, if the non-moving party fails to sufficiently establish the existence of an essential element to its claim on which it bears the ultimate burden of proof, the court should enter summary judgment against that party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

6

411 U.S. 792, 802 (1973), and its descendants" offers the other. *Hayes v. Sotera Def. Sols., Inc.*, No. 1:15cv1130, 2016 WL 2827515, at *4 (E.D. Va. May 12, 2016)

### 1. *Direct Evidence*[4]

Granet can establish an age discrimination claim with direct evidence. "Direct evidence must be 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" *Warch*, 435 F.3d at 520 (quoting *Taylor v. Va. Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999)). In other words, "[d]irect evidence is evidence that the employer announced, or admitted, or otherwise unmistakably indicated that age was a determining factor in the particular employment action." *Ramos v. Molina Healthcare, Inc.*, 963 F. Supp. 2d 511, 522 (E.D. Va. 2013) (quoting *Marlow v. Chesterfield Cnty. Sch. Bd.*, 749 F. Supp. 2d 417, 427 (E.D. Va. 2010)).

"Derogatory comments about an employee's age may be direct evidence of age discrimination, provided they concern the employee's age and sufficiently demonstrate that the employer's age-related animus affected the employment decision at issue." *Arthur v. Pet Dairy*, 593 F. App'x 211, 218 (4th Cir. 2015) (per curiam).

Although the Fourth Circuit has not announced its preferred test for determining "whether derogatory comments [are] direct evidence of actionable age discrimination," in recent cases it has applied the Fifth Circuit's test from *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374 (5th Cir. 2010). *Cole v. Family Dollar Stores of MD, Inc.*, 811 F. App'x 168, 175 (4th Cir. 2020); *see Arthur*, 593 F. App'x at 219. "Under *Jackson*, derogatory comments are direct

---

[4] Granet also argues that he can establish his ADEA claim through indirect, circumstantial evidence, the other "avenue of proof." Because the Court finds that Granet establishes his claim with direct evidence, the Court need not address this other avenue. The Court, however, notes its skepticism that Granet performed at a level that met Presidio's legitimate expectations; Granet's numerous apologetic emails and texts demonstrate that even Granet understood that his performance did not meet his employer's expectations.

7

evidence of discrimination if they are (1) 'related to the protected persons of which the plaintiff is a member'; (2) 'proximate in time to the complained-of adverse employment decision'; (3) 'made by an individual with authority over the employment decision at issue'; and (4) 'related to the employment decision at issue.'" *Cole*, 811 F. App'x at 175 (quoting *Jackson*, 602 F.3d at 380).

Granet argues that Michie forced Granet to resign because he "asked out a younger woman at another company." (ECF No. 1 ¶ 41.) Granet contends that Michie would not have forced his termination if Granet was closer in age to Riles. Although Michie certainly had many reasons to find fault with Granet's performance and professionalism, Michie's comment, when viewed in the light most favorable to Granet, suggests that Michie found Granet's overture of Riles all the more inappropriate *because* of Granet's age. The Court finds, therefore, that Michie's comment satisfies the test from *Jackson*: (1) it related to Granet, (2) it happened just two days before Granet's forced resignation; (3) Michie, who ultimately hired and fired Granet, made the comment; and (4) the comment related to Granet's LinkedIn proposition, "the last straw" for Granet's employment. Accordingly, the Court finds that Michie's comment amounts to direct evidence of age discrimination.

### 2. *Pretext for Age Discrimination*

When an employer can show—as Presidio can here—that "other legitimate motivations" existed for the adverse employment decision, "the employee must offer sufficient evidence to show that these factors were not 'the reason' for the employer's decision." *Cole*, F. App'x at 175 (quoting *Arthur*, 593 F. App'x at 220). To make this showing, "the plaintiff must present evidence that discriminatory animus was a 'necessary logical condition' for the adverse employment action and that the employer did not act 'because' of other legitimate motivations

8

for the action." *Arthur*, 593 F. App'x at 219 (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)). In other words, "a plaintiff producing direct evidence still must prove by a preponderance that age was the but-for cause of the challenged employment decision." *Cole*, 811 F. App'x at 175.

Presidio says that Granet's "unprofessional and inappropriate conduct in the workplace and substandard performance" motivated its decision to force Granet's resignation. (ECF No. 14, at 1.) Presidio offers ample evidence—much of it detailed above—of Granet's unprofessionalism and poor performance.

The Court recognizes that Michie's decision to force Granet's resignation *could*—and very well may—have arisen from Granet's "unprofessional and inappropriate conduct in the workplace and substandard performance." (*Id.*) But Michie's comment came on *the same day* that he sent Granet home and got the ball rolling on his forced resignation. And Michie's email to Presidio's Human Resource Director even mentioned Riles's age. (*Id.* ¶ 69 ("Brett has been harassing one of [Morton's] employees . . . . a 21 year old representative of Morton Consulting.").) Granet argues that but for his age, Michie would not have begun the termination process on January 24, 2019, and forced him to resign the next day. In other words, Granet contends that if he and Riles were closer in age, Michie would not have found Granet's behavior as inappropriate and would have allowed Granet's employment at Presidio to continue—at least beyond January 25. Viewing the evidence in the light most favorable to Granet, the Court agrees, finding that a jury could find that Granet has shown, by a preponderance, that but for his age, he would have remained employed at Presidio beyond January 25.

## III. CONCLUSION

The Court concludes that a reasonable jury could find for Granet on the evidence presented. Accordingly, the Court will deny summary judgment for the defendant.

The Court will enter an appropriate order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 20 October 2020
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge